Southeastern Pennsylvania Transportation Authority, Appellant, *v.* Board for the Assessment and Revision of Taxes of Delaware County, Township Commissioners of Upper Darby, and Board of School Directors of Upper Darby School District, Appellees.

Southeastern Pennsylvania Transportation Authority, Appellant, *v.* Board for the Assessment and Revision of Taxes of Delaware County, Borough Council of the Borough of Darby, and Board of School Directors of Darby-Colwyn Joint School District, Appellees.

208

Argued April 1, 1974, before President Judge Bow-
man and Judges Crumlish, Jr., Kramer, Wilkinson,
Jr., Mencer, Rogers and Blatt.

*William T. Coleman, Jr.,* with him *John F. Smith,
III, Lewis H. VanDusen, Jr., Ralph B. D'Iorio,* and,
of counsel, *Dilworth, Paxson, Kalish, Levy & Coleman,
Drinker, Biddle & Reath* and *Cramp, D'Iorio, McCon-
chie and Surrick,* for appellant.

*Lewis B. Beatty, Jr.,* Solicitor, School District of
Upper Darby, *Peter J. Nolan,* Solicitor, Board of As-

sessment and Revision of Taxes of Delaware County, and *Alvin S. Ackerman*, Solicitor, Township of Upper Darby, for appellees.

OPINION BY JUDGE WILKINSON, May 1, 1974:

The three cases[1] before us for decision turn on the question of whether appellees, being a county, a township, a borough, and two school districts, have the authority to levy real estate taxes upon real estate owned by appellant, Southeastern Pennsylvania Transportation Authority (SEPTA). The lower court held that the appellees had such authority if the real estate against which the levy was made was not reasonably necessary for the operation of a public transportation system in this location. We must reverse and rule that in the absence of a statute specifically authorizing these inferior governmental agencies to levy a tax against real estate owned by the Commonwealth, no such power exists and real estate owned by SEPTA is beyond the appellees' taxing authority.

We need not reach the second question of whether Section 39 of the Metropolitan Transportation Authorities Act of 1963, Act of August 14, 1963, P.L. 984, 66 P.S. §2039, which provides that SEPTA should not be required to pay any property taxes imposed by any taxing authority is constitutional. While for many purposes it may be unimportant whether property's freedom from taxation is based on lack of statutory authority to levy the tax, or a statutory exemption from the tax, certainly it is clear that you do not reach the question of a statutory exemption or its constitutionality if there is *no authority to levy the tax.*

---

[1] In a fourth case, No. 712 C.D. 1973, the parties in their briefs and at oral argument agreed that all of the real estate involved was reasonably necessary for the operation of SEPTA and that the decision of the court below should be reversed.

After the decision of our Supreme Court in *Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A. 2d 882 (1971), and this Court's decisions in *City of Philadelphia v. Southeastern Pennsylvania Transportation Authority,* 8 Pa. Commonwealth Ct. 280, 303 A. 2d 247 (1973), and *City of Philadelphia v. Southeastern Pennsylvania Transportation Authority,* 1 Pa. Commonwealth Ct. 101, 271 A. 2d 504 (1970), *aff'd.,* 441 Pa. 518, 272 A. 2d 921 (1971), it seems quite clear to us that this is not a case of first impression and that the decisions in those three cases dictate a result here in favor of appellant.

In *Erie, supra,* our Supreme Court held that the Erie Metropolitan Transit Authority, as an agency of the Commonwealth and part of its sovereignty, was not subject to a fuel tax levied by the Commonwealth in the absence of express language in the statute authorizing the tax. The basis for this decision was laid in the earlier case of *Commonwealth of Pennsylvania State Employes' Retirement System v. Dauphin County,* 335 Pa. 177, 181, 6 A. 2d 870, 872 (1939), when it was held that real estate owned by the Commonwealth could not be taxed by a political subdivision "unless it points to a statute clearly authorizing it to do so." As forcefully stated by Chief Justice HORACE STERN, in *Fischer v. Pittsburgh,* 383 Pa. 138, 141, 118 A. 2d 157, 158 (1955), "municipal corporations can levy no taxes unless the power be plainly and unmistakably conferred by the sovereign state, and the grant of such right must be strictly construed and not extended by implication." (Citations omitted.)

The first six pages of appellees' printed brief are used to set forth the quotations from the various statutes upon which appellees rely as giving them authority to tax the real estate of SEPTA. These are Sections 201 and 204 of The General County Assessment Law, Act of May 22, 1933, P. L. 853, *as amended,* 72 P.S.

§§5020-201 and 5020-204; Sections 672, 674, and 675 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, *as amended,* 24 P.S. §§6-672, 6-674, and 6-675; and Section 1709 of The First Class Township Code, Act of June 24, 1931, P. L. 1206, *as amended,* 53 P.S. §56709. In all of these Acts, appellees cannot direct our attention to the magic words, "including property owned by the Commonwealth." In the absence of such words indicating an intention to grant authority to levy a tax on property of the Commonwealth, the Acts relied on by appellees are unavailing.

Certainly in this case there can be no question that SEPTA is an instrumentality of the Commonwealth and participates in its rights as sovereign. In addition to the express words of the statute under which SEPTA was created and so designated, and the prior holdings of this Court, the parties have so stipulated in this case:

"(5) SEPTA was created pursuant to the Metropolitan Transportation Authorities Act of 1963, 66 P.S. §2001 et seq. to serve the public purpose of providing mass transportation to the residents of the several counties comprising Southeastern Pennsylvania; the Counties of Bucks, Chester, Delaware, Montgomery and the City and County of Philadelphia.

"(6) Pursuant to and in accordance with the public purpose expressed in the Metropolitan Transportation Authorities Act of 1963, SEPTA provides public transportation to the residents of Southeastern Pennsylvania and in so doing, SEPTA operates without profit.

"(7) Pursuant to 66 P.S. §2004(a), SEPTA is a body corporate and politic and is an agency and instrumentality of the Commonwealth exercising the public power of the Commonwealth and is in no way deemed to be an instrumentality of any city or county or other municipality or engaged in the performance of any municipal function."

The court below and appellees rely on the cases of *Moon Township Appeal*, 387 Pa. 144, 127 A. 2d 361 (1956), and *Pennsylvania Turnpike Commission v. Fulton County*, 195 Pa. Superior Ct. 517, 171 A. 2d 882 (1961). The *Moon Township* case is inapposite, for there you had a township and a school district taxing property owned by the County of Allegheny and used in connection with the Greater Pittsburgh Airport. The County obviously could not assert the freedom of the sovereign from the general taxing authority of the township and the school district and, therefore, had to rely on the general exemption from taxation of public property used for a public purpose. Such is not the case here. With regard to the *Turnpike* case, *supra*, suffice it to say that it was decided by the Superior Court prior to *Erie, supra*, being decided by our Supreme Court and to the extent to which it is inconsistent must be deemed to no longer represent the law of Pennsylvania.

If local taxing bodies do not have authority to tax SEPTA's property, it might well be asked why the Legislature put into Section 39 of the Metropolitan Transportation Authorities Act of 1963, 66 P.S. §2039, the broad language of exemption as follows: "The effectuation of the authorized purposes of any authority created under this act shall and will be, in all respects, for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions, and since such authority will be performing essential governmental functions in effectuating such purposes, it shall not be required to pay any property taxes or assessments, of any kind or nature whatsoever, now in existence or to be enacted in the future, whether imposed by the Commonwealth or by any political subdivision thereof, or by any other taxing authority, and the bonds issued by such authority, their transfer, and the income therefrom (including any profits made on

the sale thereof), shall at all times be free from taxation within the Commonwealth." Without engaging in undue speculation on what the Legislature intended beyond what it actually said, it seems appropriate to assume that the drafters of this legislation were cognizant of the principle that the property of the Commonwealth is beyond the taxing authority of the local taxing bodies and, indeed, beyond the taxing acts of the Commonwealth, unless the Legislature specifically indicates a contrary intention. Recognizing the impediment local taxation would represent to the successful operation of this distressed transportation system, it is difficult to imagine how the Legislature could have used stronger language to indicate that the property owned by this instrumentality of the Commonwealth was beyond the taxing authority of all local taxing bodies.

Accordingly, the decision of the court below is reversed and the respective taxing authorities are directed to remove the property of Southeastern Pennsylvania Transportation Authority from the tax rolls.