457 A.2d 1264

**In re Appeal of the BOARD OF SCHOOL DIRECTORS OF the OWEN J. ROBERTS SCHOOL DISTRICT from Decision of the Board of Assessment Appeals of Chester County Exempting from Taxation Premises Designated Parcel 24–6–3, East Nantmeal Township, Chester County, Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 28, 1982.

Decided March 18, 1983.

466

Lane H. Daylor, Pottstown, for appellant.

John S. Halstead, West Chester, William L. Cremers, Phoenixville, Wayne M. Richardson, Asst. Atty. Gen., Millersville, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

This appeal by allowance is from the August 16, 1979 order of the Commonwealth Court, 45 Pa.Cmwlth. 135, 405 A.2d 1314, sustaining a Chester County Court of Common Pleas order, on *de novo* appeal from that County's Board of Assessment Appeals, that Tax Parcel 24–6–3, known as Welkinweir and located within the Owen J. Roberts School District, is exempt from taxation because the property is owned by the Commonwealth.

Appellant has argued at every level that this particular transfer to the Commonwealth with retained lifetime possession by the grantors and express detailed reservations of control, both during and after grantors' joint lives, in them and a non-profit association, said to be created for charitable purposes, is insufficient to exclude Welkinweir from local real estate taxation. However, the lower courts have not examined the indicia from which ownership for tax purposes flow, but have simply assumed such ownership from the title transfer. Since such an assumption is incorrect, we must remand to Common Pleas for determination of this issue.

■ In *Commonwealth v. Dauphin County,* 335 Pa. 177, 6 A.2d 870 (1939) we held that real estate owned by the Commonwealth may not be subjected to taxation by political subdivisions in the absence of express statutory authority. This principle was reaffirmed in *Southeastern Pennsylvania Transportation Authority v. Board of Assessment and Revision of Taxes of Delaware County,* 13 Pa. Commonwealth Ct. 207, 319 A.2d 10 (1974). *See also Commonwealth v. Erie*

*Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971). Thus, in the absence of express statutory authorization no power to tax Commonwealth agencies can be imputed to a political subdivision.

■■■ The Commonwealth Court has correctly held the applicable statute, the General County Assessment Law, Act of May 22, 1933, P.L. 853, § 201, as amended,[1] does not expressly impose local real estate taxes on property owned by the Commonwealth. *SEPTA v. Bd., Commonwealth v. Dauphin County, supra.* However, this presumption that the legislature does not intend to subject the sovereign's property to local taxation unless it plainly says so applies only where the Commonwealth does in fact have rights of control over the premises consistent with ownership. *Baltimore & Ohio Railroad Appeal,* 405 Pa. 349, 175 A.2d 841 (1961). Mere registration of title in the Commonwealth is not always sufficient to establish its ownership for tax purposes. The trial court here must consider *de novo* whether appellant school district's uncontradicted evidence, documentary and otherwise, of the Rodebaughs' continuing possession and control of the property overcomes the *prima facie* validity of the Board of Assessment Appeal's action "exempting" it from assessment.

Welkinweir is an estate in Chester County consisting of one hundred and sixty-two acres of land, a house containing twenty or more rooms, a garage and an equipment building. The property was acquired by Everett G. and Grace H. Rodebaugh on May 4, 1935 by deed from Edgar G. and Elizabeth H. Carlisle and has been the Rodebaughs' residence since that date. On the tenth of November, 1976, the Rodebaughs executed an "open space easement in gross" granting Green Valleys Association, an association therein described as a public charity organized to preserve historical sites and natural scenic and conservation areas, a perpetual encumbrance, restriction and covenant to maintain Welkinweir in its present scenic state, requiring that the "property shall be used solely for farming, residential or recreational

1. 72 P.S. § 5020–201.

purposes or for such religious, charitable, scientific or educational purposes as might be carried on by an 'exempt organization' under the provisions of Section 501(c)(3) of the United States Internal Revenue Code or such amendments thereto ... as may hereafter govern such organizations." [2] Green Valleys Association, its successors and assigns, were given the right to enter upon the property "to inspect for violations of the ... [easement's] provisions; [3] to remove or eliminate any such violations; and to perform such restoration as may be deemed necessary to restore the land after removal of said violations," [4] as well as to take legal action to enforce the easement's provisions.

On May 31, 1977, the Rodebaughs signed and acknowledged a deed transferring title in Welkinweir to West Chester State College subject to the November 10, 1976 Easement in Gross and to a Statement of Principles also executed on November 10, 1976. These principles required the College, inter alia, to: (1) pay the appraisal cost for the easement given to Green Valleys Association, (2) "furnish full and first-class maintenance of the residence, contents and grounds according to standards at least as high as those previously observed, casualty and liability insurances, utilities, security patrol service on a seven-day, three-shift basis and special security services during public events or donors' absence," in conformity with correspondence between the college vice-president and the Rodebaughs, (3) submit any contemplated major physical additions to the Rodebaughs for approval, (4) submit the timing and details of all contemplated uses of Welkinweir and its facilities for the prior

2. Open Space Easement in Gross, Reproduced Record at pp. 33a, 34a.

3. The purpose of this right of entry is set forth as follows in the easement:
   2. In order to accomplish the intent of the Easement set forth in Paragraph 1 above, Grantor-Declarant hereby covenants and agrees with Grantee-Trust that the Property shall remain in its present scenic state, subject to the qualifications hereinafter mentioned and shall not be the subject of industrial, commercial, or residential development.

4. *Id.* at p. 37a.

approval of the Rodebaughs and (5) provide residence and ground staff satisfactory to and amenable to the direction of the Rodebaughs. The Rodebaughs retained the right to reside at Welkinweir as long as they desire and enjoy all uses and prerogatives which preceded the transfer of title.

From the foregoing it appears that the Rodebaughs may have reserved to themselves a life estate[5] subject only to the limited present rights transferred by the easement in gross to Green Valleys. The record does not disclose the circumstances of Green Valleys' creation, its relation, if any, to the Rodebaughs, or the methods by which its officers and directors are chosen. Even if its rights were sufficient to abstractly reduce the Rodebaughs' present user below a life estate, these facts would need development. While there is no explicit language in the deed the Rodebaughs executed on May 31, 1977 to the college creating such an estate, the use of any particular phrases or words of art is not required in order to create or reserve a life estate. *Cheroka v. Tobolski,* 151 Pa. Superior Ct. 238, 30 A.2d 152 (1943), Restatement of the Law of Property § 107, Comment (e) (1936). The reservation of current possession in Welkinweir, approval of all contemplated uses of the grounds and facilities and authority to direct the grounds and residence staff supports in detail the general reservation of the right of the donors, or the survivor, to continue to reside at Welkinweir as long as they so desire and to enjoy all those uses and prerogatives which preceded transfer of title. The fact that the reservations are in the Statement of Principles to which the May 1977 conveyance is explicitly subject rather than in the conveyance itself does not alter their effectiveness.

We are mindful both of the decisions and opinions below supporting the Commonwealth's position that it is the fee simple owner of the property in question and of the rule of judicial restraint which bars us from examining the trial

---

**5.** Although the trial judge refers to the Rodebaughs as "life tenants" at one point in his opinion, it does not appear he gave any consideration to this concept as it relates to the kind of ownership necessary to bring into play the exclusion of Commonwealth land from assessment, or a life estate's amenability to assessment.

court's conclusions in respect to factual matters. Here, however, the record discloses that present possession and substantially full control are vested in the Rodebaughs for as long as either of them chooses to exercise it. Whatever the term of art in the conveyance, it cannot be said that the Commonwealth is now in possession of the property or that it currently holds a full and absolute estate to the entire property, with unconditional power of disposition. *North Philadelphia Trust Co. v. Heinel Brothers, Inc.,* 315 Pa. 385, 172 A. 692 (1934). Neither does the Commonwealth receive any rent from the current occupants of the property, rather it is the present occupants who receive compensation from West Chester State College in the nature of insurance coverage, domestic, horticultural, maintenance and security services.

Moreover, even after the Rodebaughs' death, the college is subject to limitations in its use of the property. Although the purposes for which Green Valleys Association is said to be organized are entirely laudable and a general limitation of the sovereign's use to these purposes would not of itself preclude treatment of this estate as Commonwealth property, the detailed rights to enter, remove violations and summarily impose the association's interpretation of the best means of accomplishing these purposes on the sovereign is at least in derogation, if not inconsistent with, the sovereign's ownership.[6]

We have held in *Great Oak B & L v. Rosenheim,* 341 Pa. 132, 19 A.2d 95 (1941) that "an owner of real estate cannot transfer the registered title to another, retaining the beneficial interest to himself and thereby escape liability for taxes," citing *North Philadelphia Trust Co. v. Heinel Bros. Inc.,* 315 Pa. 385, 172 A. 692 (1934). Such a transfer is no more acceptable when the Commonwealth's immunity from taxation by its political subdivisions is used to shelter a private party. *Baltimore & Ohio Railroad Appeal,* 405 Pa.

---

**6.** As noted, the record before us does not disclose the relation, if any, between the Rodebaughs and Green Valleys Association, nor the methods by which the Association's directors and officers are chosen. These matters may be relevant to the issues involved.

349, 175 A.2d 841 (1961). The facts in the *Baltimore & Ohio* case are the reverse of the Welkinweir situation but the principle that the party in exclusive possession, occupancy and use of the property is liable for the payment of taxes is the same. In *Baltimore & Ohio,* the Commonwealth had condemned and acquired land to effectuate the relocation of railroad facilities which had previously been appropriated for the construction of the Penn-Lincoln Parkway East. When the new land was first appropriated and condemned, the Board of Assessment Appeals and Review listed it as owned by the Commonwealth and classified it as exempt from taxation. Subsequently, the Board listed the owners as the Baltimore & Ohio Railroad and/or Commonwealth of Pennsylvania and assessed the property as well as the structures erected thereon. The Baltimore & Ohio Railroad appealed the assessments on the basis that real estate taxes follow the record owner; that the City of Pittsburgh lacked the power to tax real estate to which the sovereign holds title in the nature of a governmental function, and that the railroad held no estate in the land against which a legal assessment could be made. This Court unanimously held that the Commonwealth had no actual estate but a mere naked title to the property and, therefore, found the railroad subject to local assessment and taxation:

> The General County Assessment Law of May 22, 1933, P.L. 853, as amended, 72 PS § 5020–201 et seq., is the statutory basis for the assessment of all real estate subject to taxation. There is nothing contained therein that requires that real estate taxes be levied only against the recorded owner of the fee. In general, taxes are determined by ownership. It has long been the policy of the law that the real owner should be taxed: *No. Phila. Trust Co. v. Heinel Bros., Inc.,* 315 Pa. 385, 172 Atl. 692 (1934). The actual owner, who is not the record owner, may be assessed unless exempt from taxation: *Pennsylvania Stave Company's Appeal,* 236 Pa. 97, 84 Atl. 761 (1912) and *Bemis v. Shipe,* 26 Pa. Superior Ct. 42 (1904). The actual owner of the realty, whether registered or not, is liable for the taxes: *Fidelity-Phila. Trust Co. v. Land Title*

*Bank and Trust Co.,* 326 Pa. 262, 192 Atl. 121 (1937). The right of the taxing authority to collect unpaid taxes from the registered owner is not exclusive and may be exercised against the real or beneficial owner: *No. Phila. Trust Co. v. Heinel Bros., Inc., supra,* and *Pennsylvania Co. v. Bergson,* 307 Pa. 44, 159 Atl. 32 (1932). Also, an equitable interest in real estate is subject to taxation: *City of Philadelphia v. Myers,* 102 Pa. Superior Ct. 424, 157 Atl. 13 (1931). In the case of a contract for the conveyance of land, the burden of taxation as between the parties follows possession or the right thereto: *U.S. v. Certain Parcels of Land in Phila.,* 130 F.2d 782 (1942).

*Baltimore & Ohio Railroad Appeal,* 405 Pa. at 354, 175 A.2d at 843–844 (1961).

In the present case the facts on which the question of ownership depends are largely based on a stipulation of counsel.[7] The Rodebaughs, who may be subject to taxation under the cases holding Section 1 of the General County Assessment Law, *supra,* applies to life estates[8] were not expressly a party to this stipulation. The record shows an appearance was entered for them in the Chester County Court of Common Pleas. However, no other reference to their participation appears.

For the foregoing reasons, this case must be remanded to Common Pleas to give all parties an opportunity to participate in the development of the factual record on which the legal conclusion of ownership for tax purposes depends.

■ If this leads to a conclusion that the Commonwealth is not the present owner for tax purposes, it will be necessary to reach the question of whether the present interests in Welkinweir which the Rodebaughs and Green Valleys Association have constitute a life estate in the Rodebaughs subject to local assessment or fall under the public use

7. Reproduced Record at 8a–41a.

8. *See McDannel v. Weddige,* 79 Pa. Superior Ct. 494, (1922) holding that a life tenant is obligated to pay all ordinary taxes assessed and accruing during the tenancy. *See also Spangler v. York County,* 13 Pa. 322 (1850).

exemption in Section 2(a), Article VIII of the Pennsylvania Constitution. Here, we hold only that the lower courts' conclusion that the premises designated Parcel 24–6–3 in East Nantmeal Township, Chester County, are presently owned for tax purposes by the Commonwealth of Pennsylvania based solely on the transfer of record title was incorrectly made without consideration of appellant's evidence negating its possession of the incidents from which ownership flows. We, therefore, vacate the order of Commonwealth Court and remand the case to the Chester County Court of Common Pleas for further proceedings consistent with this opinion.

O'BRIEN, C.J., did not participate in the decision of this case.